**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| _____ | : | |
| STEVEN CHERNUS and ED | : | |
| SHAPIRO, individually and on | : | Civil Action No.: 17-673(FLW) |
| Behalf of all others similarly | : | |
| situated, | : | |
|  | : | |
| Plaintiffs, | : | **OPINION** |
|  | : | |
| v. | : | |
|  | : | |
| LOGITECH, INC., | : | |
|  | : | |
| Defendant. | : | |
| _____ | : | |

**WOLFSON**, **U.S. District Judge:**

Plaintiffs Steven Chernus, a Pennsylvania resident, and Ed Shapiro, a New Jersey resident (collectively, "Plaintiffs"), brought this putative nationwide (except California consumers) class action, alleging, *inter alia*, consumer fraud, breach of warranty and unjust enrichment arising from each Plaintiff's purchase of a self-installed and operated digital home video surveillance system known as the "Alert" System, manufactured and sold by Defendant Logitech, Inc. ("Defendant" or "Logitech"). In the present matter, Defendant seeks dismissal of Plaintiff Chernus' class claims for lack of personal jurisdiction, and it also moves to dismiss Plaintiff Shapiro's claims for lack of standing and failure to state a claim.

For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part as follows: Plaintiff Chernus is dismissed from suit as the Court lacks personal jurisdiction over his claims. As such, all Pennsylvania state law claims asserted in the Complaint are dismissed. Plaintiff Shapiro's NJCFA claim is dismissed without prejudice. Shapiro is given leave to amend the Complaint to cure the deficiencies with regard to that claim within 15 days from the date of the Order accompanying this Opinion. In addition, Plaintiffs' unjust enrichment and declaratory relief causes of action are dismissed with prejudice. Defendant's motion to dismiss for lack of standing is denied, as well as its motion to dismiss Plaintiffs' breach of express and implied warranty claims. Finally, Defendant's request to strike the nationwide class allegations is denied without prejudice.

## BACKGROUND and PROCEDURAL HISTORY

The following facts are taken from the Amended Complaint ("Compl.") and assumed as true for the purposes of this dismissal motion. In August 2010, Logitech began selling and distributing high-definition digital video security systems under the "Alert" brand name (the "Alert System"). The Alert System is a complete home video security system that would allow customers to "Be There When You're Not." Compl., ¶ 9. Plaintiffs allege that Logitech aggressively marketed and sold its Alert System to consumers directly through its website and retail affiliates by promising to deliver "peace of mind in a box." *Id.* at ¶ 10. Plaintiffs further allege that Logitech emphasized that its Alert System is the comprehensive solution to home security, and that the System would provide

consumers with safety and security features, such as motion detection alerts, plus live and recorded video feeds available from any internet connected computer, smartphone or table, which would allow users to monitor their home remotely. *Id.* at ¶¶ 10, 13. According to Plaintiffs, Logitech advertised these benefits and features, and charged consumers premium prices accordingly. *Id.* at ¶¶ 15-16.

Logitech provided an express warranty with the Alert System that its "Logitech hardware product shall be free from defects in material and workmanship." *Id.* at ¶ 17. In addition, Logitech warranted that the Alert System would be merchantable for its ordinary purpose of providing reliable digital home security for the duration of the one-year express warranty. *Id.* In that regard, Plaintiffs claim that Logitech represented that purchasers whose Alert Systems failed could either choose Logitech to (1) repair or replace the products, or (2) provide a refund. *Id.*

Both plaintiffs purchased a Logitech Alert System. Plaintiffs allege that soon after they installed their Systems, they began experiencing camera failures, issues with the products staying powered up, large gaps in recorded videos (which indicated that the cameras were not recording, downloading, or saving video properly), connectivity issues, malfunction of SD (memory) cards, as well as false and/or failed security alerts. *Id.* at ¶¶ 34, 37. As a result, according to Plaintiffs, they complained of these problems to Logitech, but were not provided any relief under the warranty. *Id.* at ¶¶ 34, 37-38. Indeed, Plaintiffs allege that numerous other consumers have experienced the same reliability and

performance issues with their Alert Systems, and Logitech has similarly ignored the consumers' requests to honor the company's warranties. *Id.* at ¶¶ 18-25. Plaintiffs aver that in the last quarter of 2012, Logitech decided to discontinue entirely the manufacture and sale of the Alert Systems by 2014. Plaintiffs allege, however, "Logitech knew internally for nearly two full years that it had given up on the defective Alert Systems but continued to sell its remaining stock to unsuspecting customers who would eventually be stuck with significant investments in defective products that Logitech [was] unable to repair or replace." Id. Plaintiffs further claim that this fraudulent omission led customers to continue to purchase the Alert Systems without knowledge of Logitech's concealments. *Id.* at ¶ 27.

Plaintiffs brought this action alleging that Logitech's conduct violated consumer protection and warranty laws by, *inter alia*: 1) deceptively marketing and selling Alert Systems that Logitech knew were defective because the cameras experienced a high rate of failure; (2) deceptively marketing and selling Alert Systems that were never merchantable for the purposes of providing continuous, reliable digital home security; (3) refusing to honor express and implied warranty obligations; and 4) concealing from purchasers that Logitech was discontinuing the sales of Alert Systems, which left consumers without replacement parts when their Systems became inoperable. *See id.* at ¶ 55.

Based on these allegations of wrongful conduct, Plaintiffs assert claims against Logitech, a California corporation, under i) California's Unfair Competition Law ("ULC"), Bus. & Prof. Code §§ 17200, *et seq.*; ii) the California

Consumer Legal Remedies Act ("CLRA"), Civ. Code §§ 1750, *et seq.*; iii) the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq.*; and iv) the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("PUTPCPA"), 73 P.S. § 201-1, *et seq.*, as well as New Jersey and Pennsylvania common law claims of breach of express and implied warranty and unjust enrichment. *Id.* at ¶¶ 54-88.

Plaintiffs brought this action on behalf of themselves and a proposed nationwide class defined as: "All purchasers of Logitech Alert Systems in the United States (except California)."[1] *Id.* at ¶ 40. In addition, Plaintiff Chernus, a resident of Pennsylvania, and Plaintiff Shapiro, a resident of New Jersey, seek to represent sub-classes of consumers in Pennsylvania and New Jersey, respectively, under their respective state's laws. *Id.* at ¶¶ 41-42.

In the instant matter, Defendant moves to dismiss Chernus as a plaintiff on the basis that this Court lacks personal jurisdiction over Logitech with regards to Chernus' claims. In addition, Defendant argues that the Court also lacks personal jurisdiction over the non-New Jersey nationwide-class claims pursuant to the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)(the "Bristol-Myers Decision"); in that regard, Defendant moves that Chernus' claims be dismissed and that the Pennsylvania-

---

[1]     Plaintiffs' counsel is also counsel of record for the plaintiffs in a California state court putative class action, *Parker v. Logitech*, Case No. RG15781276 (the "California State Class Action"), pending in the Alameda County Superior Court in Oakland, California.    That action was brought on behalf of California consumers asserting similar claims over Logitech's Alert System.

and nationwide-class allegations be struck. Moreover, Defendant moves to dismiss Shapiro's New Jersey based claims for lack of standing and failure to state a claim.

**DISCUSSION**

## I. Personal Jurisdiction

Defendant argues that it is entitled to a dismissal of Plaintiff Chernus' claims and all non-New Jersey class claims for want of personal jurisdiction. In so arguing, Defendant relies on the Supreme Court's *Bristol-Myers* Decision. Because these two issues involve different inquires, I will address them separately. The first issue focuses on whether Plaintiff Chernus, an out-of-state resident, may bring, in this forum, Pennsylvania state law claims on behalf of himself and a putative sub-class of members residing in Pennsylvania. The second issue centers on the broader question of whether the *Bristol-Myers* Decision concerning specific jurisdiction applies to class actions.

### A. Plaintiff Chernus

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden to prove facts sufficient to establish personal jurisdiction by a preponderance of the evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 478 (D.N.J. 2009); *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 632 (D.N.J. 2004). Under Rule 12(b)(2), "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the

plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004); *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). However, the plaintiff still "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello v. Canale*, 563 F. Appx. 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank*, 954 F.2d at 146). "To meet that burden, [the plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.'" *Id.* (citation omitted). "In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Id.* (citation omitted); *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (holding that a plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence; reliance on the bare pleadings is not enough."), *cert. denied*, 498 U.S. 812 (1990).

Importantly, in the context of a Rule 12(b)(2) analysis, when a suit is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action. *Famular v. Whirlpool Corp.*, No. 16-944, 2017 U.S. Dist. LEXIS 8265, at *7 (S.D.N.Y. Jan. 19, 2017); Newberg on Class Actions § 6:25 (5th ed.)("A putative class representative seeking to hale a defendant into court to answer to the class must have personal jurisdiction over that defendant just like any individual litigant must"); *In re Dental Supplies Antitrust Litig.*, No. 16-696, 2017 U.S. Dist. LEXIS 153265, at *26 (E.D.N.Y. Sep. 20, 2017). In other words, in a class action,

"personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action." *Beach v. Citigroup Alt. Invests. LLC*, 2014 U.S. Dist. LEXIS 30032, at *16-17 (S.D.N.Y. Mar. 7, 2014); *see Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 499 (7th Cir. 1972)("[a] plaintiff who is unable to secure standing for himself is certainly not in a position to fairly insure the adequate representation of those alleged to be similarly situated. In short, a predicate to a party's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class"); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970)(same); *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y, 1980); *Williams v. Firstplus Home Loan Owner Tr. 1998-4*, 310 F. Supp. 2d 981, 986 n.4 (W.D. Tenn. 2004)("[o]n a Rule 12(b)(2) motion to dismiss a class action, the court assesses whether the named plaintiffs, rather than the class members, have themselves established personal jurisdiction over the defendants").

It must be stressed that, even in the context of a class action, "it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification."[2] *Aliano v. Quaker Oats Co.*, No. 16-3087, 2017 U.S. Dist. LEXIS 1158, at *13-14 (N.D. Ill. Jan. 4, 2017); *Ambriz v. Coca Cola Co.*, No. 13-3539, 2014 U.S. Dist. LEXIS 9870,

---

[2]     As discussed *infra*, contrary to Defendant's position, the *Bristol-Myers* Decision did not change this concept.

at *18 (N.D. Cal. Jan. 27, 2014)("[t]he Court concludes that a defendant's contacts with the named plaintiff in a class action, without reference to the defendant's contacts with unnamed members of the proposed class, must be sufficient for the Court to exercise specific personal jurisdiction over the defendant"); *Tsan v. Seventh Generation, Inc.*, No. 15-205, 2015 U.S. Dist. LEXIS 79339, at *8 (N.D. Cal. Jun. 17, 2015); *Barry v. Mortgage Servicing Acquisition Corp.*, 909 F. Supp. 65, 73 (D.R.I. 1995)("it is the named class representative . . . whose claims must satisfy this test in order for the Court to have personal jurisdiction over [defendant] in this action"); *Calagaz v. Calhoon*, 309 F.2d 248, 253 (5th Cir. 1962); *Wilson v. Olathe Bank*, No. 97-2458, 1998 U.S. Dist. LEXIS 5509, at *17 (D. Kan. Mar. 2, 1998); *see also Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169-70 (3rd Cir. 1987); *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1129-30 (2d Cir. 1974); *Dunn v. Sullivan*, 758 F. Supp. 210, 216 (D. Del. 1991); *Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001)(holding that "it is well settled that [venue and personal jurisdiction requirements] to suit must be satisfied for *each and every named plaintiff* for the suit to go forward")(emphasis in the original); *Johnson v. Law*, 19 F. Supp. 3d 1004, 1009 (S.D. Cal. 2014); *AM Trust v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015)("claims of unnamed class members are irrelevant to the question of specific jurisdiction"); *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015)("[in] a purported class action, specific jurisdiction must be demonstrated by the named Plaintiffs").

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see* Fed. R. Civ. P. 4(e). In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. 3d at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on *in personam* jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945), the Supreme Court held that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central

concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

"Personal jurisdiction may be exercised under two distinct theories, a defendant's general or claim-specific contacts with the forum." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *Bristol-Myers*, 137 S. Ct. at 1780. With regard to finding general jurisdiction, the Supreme Court refined the standard in *Daimler*. According to *Daimler*, general jurisdiction refers to a court's power to "hear any and all claims" against an out-of- state entity when its "affiliations with the State are so continuous and systematic *as to render [it] at home* in the forum state." *Daimler,* 134 S. Ct. at 751 (internal quotation marks and citation omitted) (emphasis added). To be clear, since *Daimler,* courts have found that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it "at home" in that state. *See Malik,* 710 Fed. Appx. at 563-64; *Sonera Holding B.V. v. Cukurova Holding A.S.*, No. 12-4820, 750 F.3d 221, 2014 (2d Cir. 2014); *Baldwin v. Taishang Gypsum Co., Ltd.*, 742 F.3d 576, 587 (5th Cir. 2014); *Harris v. SportBike Track Gear*, No. 13-6527, 2015 U.S. Dist. LEXIS 128289 at *7 (D.N.J. Sep. 8, 2015); *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13-4110, 2014 U.S. Dist. LEXIS 68293, at *8 (D.N.J. May 19, 2014); *Henry A. v. Willden*, No. 10-528, 2014 U.S. Dist. LEXIS 63129, at *19 (D. Nev. May 7, 2014)(finding that Supreme Court in *Daimler* has clarified that "the reach of general jurisdiction is narrower than had been supposed in the lower courts for many years"); *Jennings v. Bonus Bldg.*

*Care, Inc.*, No. 13-663, 2014 U.S. Dist. LEXIS 62836, at *10-11 (W.D. Mo. May 7, 2014). The natural result of general jurisdiction's "at home" requirement is that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760.

Based on general jurisdiction principles, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Indeed, if the paradigm forum for general jurisdiction over an individual is the individual's domicile or his home, for a corporation, it is an equivalent place, with the place of incorporation and the principal place of business being the paradigm bases. "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 760.

Specific jurisdiction, on the other hand, exists when the plaintiff establishes the existence of minimum contacts between the defendant and the forum state. *Rocke v. Pebble Beach Co.*, 541 Fed. Appx. 208, 211 (3d Cir. 2013). Due process requires that the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.,* 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer*, 433 U.S. at 204). Thus, when there is an assertion of specific jurisdiction, the constitutional inquiry requires a court to consider, first, "whether the defendant 'purposefully directed his activities' at the forum,"

*Cerciello v. Canale*, 563 Fed. Appx. 924, 927 (3d Cir. 2014)(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted)); second, whether the litigation "arise[s] out of or relate[s] to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and third, if the first two requirements are met, whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice,'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320). The court must bear in mind that the defendant must have "'purposefully avail[ed] [itself] of the privilege of conducting activities within the forum'" before specific jurisdiction arises. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Recently, the Supreme Court in *Bristol-Myers* reaffirmed the importance of meeting the minimum-contacts requirement. In *Bristol-Myers*, more than 600 individual consumers filed a products liability action in California state court against Bristol-Myers Squibb Company — a company incorporated in Delaware and headquartered in New York — asserting various state-law claims based on injuries allegedly caused by the pharmaceutical company's drug Plavix. *Bristol-Myers*, 137 S. Ct. at 1777. Applying settled specific jurisdiction principles, the Court ultimately held that California lacked specific jurisdiction over nonresident consumers' claims, and in doing so, rejected the California Supreme Court's application of the sliding scale approach to specific jurisdiction, under which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are

unrelated to those claims." *Id.* at 1781. In that regard, the Supreme Court reasoned that because the nonresidents were not prescribed, did not purchase, did not ingest, nor get injured by Plavix in California, there was no "connection between the forum and the specific claims at issue." *Id.* at 1781. The Court explained that "[t]he mere fact that [some] plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims."[3] *Id.*

Here, based on the foregoing, because Plaintiff Chernus seeks to bring a nationwide class, as well as a sub-class of consumers residing in Pennsylvania, I must first examine whether Chernus, himself, has independently established this Court's personal jurisdiction over Defendant with respect to his claims. On

---

[3]     While *Bristol-Myers* recognized that its decision concerned the due process limits on the exercise of personal jurisdiction by a state court, the Court left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. That question, however, is not relevant here, because this Court is exercising diversity jurisdiction and looking to state law. In that regard, *Bristol-Myers'* application of personal jurisdiction principles applies here with equal force. *See McDonnell v. Nature's Way Prods., LLC*, No. 16-5011, 2017 U.S. Dist. LEXIS 177892, at *10 n.7 (N.D. Ill. Oct. 26, 2017)("Because the Court is exercising diversity jurisdiction and looking to Illinois law, however, *Bristol-Myers Squibb Co.* applies here" despite the open question about Fifth Amendment restrictions); *Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, No. 14-2032, 2018 U.S. Dist. LEXIS 39754, at *49 (N.D. Ill. Mar. 12, 2018)(same); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-564, 2017 U.S. Dist. LEXIS 155654, at *11-12 (N.D. Cal. Sept. 22, 2017) ("federal courts routinely apply the specific jurisdiction analysis to defendants in cases that are before them solely on the basis of diversity"); *Molock v. Whole Foods Mkt., Inc.*, No. 16-2483, 2018 U.S. Dist. LEXIS 42582, at *18-19 (D.D.C. Mar. 15, 2018).

that issue, Defendant argues that Plaintiffs fell short of showing either general or specific jurisdiction sufficient to hale Defendant into court. Furthermore, Defendant relies on the *Bristol-Myers* Decision for the well-settled proposition that in order for Chernus to establish specific jurisdiction, he must show that Logitech had certain minimum contacts with New Jersey to satisfy due process. In response, Chernus argues that the *Bristol-Myers* Decision does not apply to class actions, and therefore, Defendant's reliance on that decision in this context is not appropriate. However, the question of whether *Bristol-Myers* applies to class actions is not the relevant inquiry for the purposes of assessing Chernus' obligation to satisfy personal jurisdiction.[4] Aside from advancing arguments regarding *Bristol-Myers*' application to this matter, Chernus' opposition is silent on his jurisdictional burden. Indeed, Chernus has not pled, let alone submitted any evidence, in connection with his claims — which arose in Pennsylvania — that Defendant had met the minimum contacts necessary to be sued in New Jersey for the harm Chernus suffered in his home state. Nor has Chernus met his burden under general jurisdiction.

The sum total of the allegations concerning Chernus in the Complaint mainly involves Chernus' purchase of the Logitech Alert System in his home state of Pennsylvania. The Complaint alleges that Chernus began experiencing problems with his Alert System soon after he purchased it on Logitech's website. *See* Comp., ¶ 34. Chernus avers that eventually his Alert System failed and he

---

[4]     The Court will nevertheless address this question, *infra*.

provided notice to Logitech of the defects in an effort to remedy the situation *Id.* Allegedly, however, Logitech did not resolve any of the technical issues and the company would not honor its warranty obligations. *Id.* at ¶ 35. As a result, Chernus complains that he was harmed by Logitech's wrongful conduct. *Id.* The Complaint states that Chernus, along with co-plaintiff Shapiro, are bringing this action on behalf of a nationwide putative class of consumers who purchased the Alert Systems, and Chernus, individually, is seeking to represent a sub-class of Pennsylvania consumers. *See* Compl., ¶ 42. Nowhere in the Complaint does Chernus allege that he purchased his Alert System in New Jersey, used his system in New Jersey, or otherwise suffered any harm in New Jersey. More importantly, Chernus has not furnished the Court with any jurisdictional evidence in response to Defendant's Rule 12(b)(2) motion. Based on the record, clearly, there is no "connection between the forum and [Chernus'] specific claims at issue." *Bristol-Myers,* 137 S. Ct. at 1781. Moreover, contrary to Plaintiffs' position, the mere fact that the New Jersey class members, including Plaintiff Shapiro, allegedly sustained the same injuries as did Chernus — a nonresident of New Jersey — alone does not confer this Court with specific jurisdiction over Chernus' claims. Accordingly, the Court lacks specific jurisdiction in this regard.

Likewise, Chernus has failed to establish general jurisdiction. There is no dispute that Defendant is neither incorporated nor headquartered in New Jersey. To establish general jurisdiction over Defendant, Chernus must then show that Logitech's contacts with New Jersey are so substantial as to render it "at home." No such showing has been made by Plaintiffs. In fact, in their papers, Plaintiffs

do not make any argument in that respect. Thus, I have no basis to exert general jurisdiction over Defendant with respect to Chernus' claims.

Accordingly, because the Court lacks general and specific jurisdiction over Plaintiff Chernus' claims, Chernus is dismissed as a plaintiff; consequently, all of the Pennsylvania state law claims brought by Chernus on behalf of a sub-class of Pennsylvania consumers are dismissed. I will now turn to whether this Court has jurisdiction over the putative class members who are non-forum residents.

### B.    Nationwide Class Action Claims

Defendant argues that pursuant to the *Bristol-Myers* Decision, the Court lacks personal jurisdiction over the claims of unnamed class members who do not reside in New Jersey. On this issue, the parties dispute whether that decision applies in the class action context. However, at this pleading stage, I find that resolving this question is premature.

To provide some background, since the Supreme Court rendered its decision in *Bristol-Myers,* district courts are in disagreement as to whether, in a class action context, courts must have personal jurisdiction over the claims of the nonresident, unnamed class members. On one hand, courts in the Northern District of Illinois have uniformly determined that "*Bristol-Myers* applies with equal force in the class action context." *Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.,* No. 14-2032, 2018 U.S. Dist. LEXIS 39754, at *46 (N.D. Ill. Mar. 12, 2018); *see, e.g.*, *DeBernardis v. NBTY, Inc.*, No. 17-6125, 2018 U.S. Dist. LEXIS 7947 (N.D. Ill. Jan. 18, 2018); *Anderson v. Logitech, Inc.*, No. 17-6104,

2018 U.S. Dist. LEXIS 36785 (N.D. Ill. Mar. 7, 2018); *McDonnell v. Nature's Way Prods., LLC*, No. 16-5011, 2017 U.S. Dist. LEXIS 177892 (N.D. Ill. Oct. 26, 2017). One other court, in the District of Arizona, has concluded the same. *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17-165, 2017 U.S. Dist. LEXIS 162812, at *12 n.4 (D. Ariz. Oct. 2, 2017).

On the other hand, most of the courts that have encountered this issue have found that *Bristol-Myers* does not apply in the federal class action context. But, more importantly, these cases universally held that in a putative class action 1) courts are only concerned with the jurisdictional obligations of the named plaintiffs; and 2) unnamed class members are irrelevant to the question of specific jurisdiction. *See Molock v. Whole Foods Mkt., Inc.*, No. 16-2483, 2018 U.S. Dist. LEXIS 42582, at *21 (D.D.C. Mar. 15, 2018)(explaining that "in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the named plaintiffs' are the only plaintiffs actually named in the complaint," and thus, it is only the named plaintiffs that are considered in the jurisdictional analysis); *Day v. Air Methods Corp.*, No. 17-183, 2017 U.S. Dist. LEXIS 174693, at *6 n.1 (E.D. Ky. Oct. 23, 2017); *Sanchez v. Launch Tech. Workforce Sols, LLC,* No. 17-1904, 2018 U.S. Dist. LEXIS 28907, at *8-9 (N.D. Ga. Jan. 26, 2018)(finding that "claims asserted in a class action . . . are prosecuted through representatives on behalf of absent class members"); *In re Morning Song Bird Food Litig.*, No. 12-1592, 2018 U.S. Dist. LEXIS 44825, at *16-17 (S.D. Cal. Mar. 19, 2018)("claims of unnamed class members are irrelevant to the question of specific jurisdiction"); *Fitzhenry-Russell v. Dr. Pepper*

*Snapple Grp.*, No. 17-564, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sep. 22, 2017)("[i]n a putative class action . . . one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint[,]" and in a mass tort action "like the one in *Bristol-Myers*, each plaintiff was a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints"); *Swamy v. Title Source, Inc.*, No. 17-1175, 2017 U.S. Dist. LEXIS 186535, at *4-6 (N.D. Cal. Nov. 10, 2017)(finding that the court had personal jurisdiction over the defendant as to the claims in a FLSA collective action by virtue of the specific jurisdiction established by the sole named plaintiff's claims); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*, No. 17-2161, 2018 U.S. Dist. LEXIS 43974, at *13-14 (E.D. La. Mar. 19, 2018)("[u]nlike *Bristol-Myers*, which involved a mass tort action where each plaintiff was a named plaintiff, in a putative class action, the plaintiff seeking to represent the class is the only plaintiff named in the complaint, and his claims—not the unnamed non-resident members—are relevant to the personal jurisdiction inquiry"); *Alvarez v. NBTY, Inc.*, No. 17-567, 2017 U.S. Dist. LEXIS 201159 (S.D. Cal. Dec. 6, 2017); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2074, 2017 U.S. Dist. LEXIS 197612, at *49-50 (E.D. La. Nov. 28, 2017).

Here, there is no dispute that this Court has personal jurisdiction over the claims of Plaintiff Shapiro. While all the above-cited cases decided the jurisdictional question of the unnamed class members prior to class certification, in my view, it is more prudent to address it at the class certification stage. At

this stage of the litigation, no class has been certified, and therefore, to determine whether this Court has specific jurisdiction over Defendant with respect to the claims of the unnamed class members prior to class certification would put the proverbial cart before the horse. In other words, because the class members are not yet parties in this case — and they may not be — absent class certification, I need not analyze specific jurisdiction with respect to their claims. Rather, as the cases recognized, I only look to the named plaintiffs' claims — here, Plaintiff Shapiro — when addressing specific jurisdiction at this time. Defendant may re-raise this issue at the class certification stage, if appropriate.

## III.   Standing

Having determined that the unnamed nationwide class members need not individually establish specific jurisdiction at this juncture, I turn to Defendant's next argument that Plaintiff Shapiro lacks standing to represent the proposed nationwide class, because he does not have standing to bring claims under the laws of states in which he does not reside. In support of its argument, Defendant cites *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 U.S. Dist. LEXIS 77009 (D.N.J. Jun. 6, 2014), for such a proposition. However, *McGuire* is distinguishable.

In *McGuire*, a New Jersey resident filed a nationwide class action suit on behalf of consumers who purchased or leased a BMW vehicle equipped with an allegedly defective navigation system. *Id.* at *1, 4. Importantly, the plaintiff pursued a multi-state class under the laws of unnamed class members' home states. When the defendant challenged plaintiff's standing to bring his claims

on behalf of a nationwide class, the court held, rightfully, that because the plaintiff was a resident of New Jersey and was injured solely in his home state, he lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury.[5]  *Id.* at *17.

While I tend to concur with *McGuire*'s conclusions, *McGuire*, nevertheless, does not apply, because Plaintiff Shapiro's California state law claims arise out of Defendant's California-based conduct, which has allegedly caused harm throughout the United States.   I agree with Plaintiffs that this case is fundamentally different than what *McGuire* confronted; here, Shapiro bases his standing to bring California state law claims on Defendant's corporate decisions made in California, not on injuries suffered by unnamed class members in their home states.[6]  *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D.

---

[5]     In doing so, however, the court in *McGuire* recognized that this particular standing issue has caused disagreement among district courts.  *See McGuire*, 2014 U.S. Dist. LEXIS 77009, at *15; *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 U.S. Dist. LEXIS 121373, at *25-6 (D.N.J. Oct. 20, 2011). Because I find that Plaintiff has standing to sue on other grounds, I need not address the apparent split.

[6]     It bears noting that the viability of Plaintiff Shapiro's California state law claims must still be examined under a choice-of-law analysis.  *See*, *supra.*  I make no comment as to whether those claims will survive such scrutiny.  Indeed, the parties have not briefed this issue and have not presented sufficient facts for the Court to make the necessary findings.  It is well-recognized that courts cannot meaningfully engage in a choice-of-law analysis absent a factual record; to do so would be entirely speculative.  *See McGuire*, 2014 U.S. Dist. LEXIS, at *12 (citing *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 210 (3d Cir. 2013); *Durso v. Samsung Elecs. Am., Inc.*, No. 12 -05352, 2013 U.S. Dist. LEXIS 160596 (D.N.J. Nov. 6, 2013); *Gutierrez v. Johnson & Johnson, Inc.*, No. 01-5302, 2002 U.S. Dist. LEXIS 15418, at *16 (D.N.J. Aug. 13, 2002).

Pa. 2009); *see also In re Fleetboston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 350 n. 38 (D.N.J. 2008). Finally, I note that while Defendant made standing arguments in its initial briefing, in its reply, however, it does not substantively respond to Plaintiff's arguments. I conclude, therefore, at this juncture, and not based on a choice-of-law analysis, that Shapiro has standing to bring claims pursuant to California state law.[7]

## IV.    State Law Claims

### A.    Rule 12(b)(6) Standard of Review

---

[7]    For the first time in it its reply brief, Defendant contends that all of Plaintiffs' class allegations must be stricken, because Plaintiffs can never meet the predominance requirement for class certification under Rule 23(b)(3). Defendant reasons that because Plaintiffs based their consumer-related claims on defects of the Alert System, the Court, in certifying a class, must engage in a highly individualized inquiry, which, Defendant argues, would undoubtedly preclude class treatment. For support, Defendant points to a three-page summary order issued in the California State Class Action. The state court, in that case, denied class certification, because, *inter alia*, diverse factual issues exist involving causation, i.e., whether class members had a common defect with their Alert Systems. Relying on that Order — and without a factual record — Defendant submits that I should strike class certification for similar reasons. I decline to do so at this stage of the litigation. First, I note that the standard for class certification in California is different than what federal courts are required to analyze under the factors set forth in Rule 23. More importantly, as Defendant acknowledges, the state court engaged in its analysis *after* class discovery, when the parties presented a full factual record. Here, no such record has been presented, and at the pleading stage, to strike class allegations is premature. *See Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 U.S. Dist. LEXIS 166329, at *13 (D.N.J. Dec. 1, 2016)("[d]ismissal of class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule, and is almost uniformly disfavored" (citations and quotations omitted)); *McGuire*, 2014 U.S. Dist. LEXIS 77009, at *12; *Durso,* 2013 U.S. Dist. LEXIS 160596, at *35; *Ehrhart v. Synthes (USA)*, No. 07-01237, 2007 U.S. Dist. LEXIS 94760, *7-9 (D.N.J. Dec. 21, 2007) (motion to strike highly disfavored and dismissal of class allegations should be done rarely); *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2013 U.S. Dist. LEXIS 161689, at *20-21 (D.N.J. Nov. 12, 2013).

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations and

citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations and brackets omitted).

### B.    California Consumer Fraud Claims

First, Defendant moves to dismiss Plaintiffs' First and Second Causes of action, which are brought pursuant to California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"), respectively.  Without presenting a choice-of-law analysis, Defendant argues that a dismissal of those claims is appropriate, because in the context of consumer fraud, only the law of the home state of Plaintiff, *i.e.*, New Jersey, applies, rather than the law of the state in which Defendant is headquartered and from where the alleged

misrepresentation emanated. In so arguing, Defendant cites to various decisions that have so decided, including the Third Circuit's decision in *Maniscalco* and *Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 183 (3d Cir. 2014). Defendant's arguments are well taken.

Defendant's contention is better addressed by first explaining the choice-of-law analysis. As a federal court sitting in diversity, I apply the choice-of-law rules of New Jersey to determine the controlling law. *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496 (1941); *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008). New Jersey has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 155 (2008). In applying that test, I must decide, as a threshold matter, whether an actual conflict exists between the laws of California and New Jersey, and if so, I then decide, by reference to the relevant Restatement section, which jurisdiction has the "most significant relationship" to the claim. *Maniscalco*, 709 F.3d at 206.

For example, in *Maniscalco*, the named plaintiff, a South Carolina resident, brought a putative class action against defendant Brother International Corp. for failing to disclose certain design defects with respect to some of the company's printers. *Maniscalco*, 709 F.3d at 204. The plaintiff claimed that defendant's wrongful conduct violated the NJCFA. Defendant moved for summary judgment, arguing that New Jersey law did not apply to the plaintiff's claim. The Third

Circuit affirmed my finding[8] on summary judgment that — after conducting a thorough and extensive examination on choice-of-law — the factors weighed in favor of applying the law of plaintiff's home state, *i.e.*, South Carolina, because that state had the most significant relationship with the litigation. *Id.* at 207-208. In so holding, the Third Circuit advised that in the context of that case, "the mere fact that a company is headquartered in New Jersey or that unlawful conduct emanated from New Jersey will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship" under the relevant Restatement. *Id.* at 209.

Here, Shapiro is seeking to represent a nationwide class of consumers, excluding California residents, by bringing California state law claims. He theorizes, but without conducting a choice-of-law analysis, that California would have the most significant relationship to the class claims, because Logitech is a California company and that most corporate decisions were made in that state. At first blush, as Defendant points out, Shapiro's position stands in stark contrast with the Third Circuit's reasoning in *Maniscalco* and other decisions. Indeed, in examining which law applies, Shapiro would have to demonstrate, first, that California law has the most significant relationship to his individual claims. In light of *Maniscalco*, it would be a tough road to hoe for Shapiro to show that California's state law applies in the context of his fraud claims — which arose in New Jersey — particularly since a plaintiff's home state would

---

[8]    I was the trial judge who presided over the *Maniscalco* matter.

have an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. In the event that California law does not control, Shapiro may not be able to assert California claims in this case on behalf of a class of non-California consumers. *See Maniscalco*, 709 F.3d at 211.

That said, however, I am also mindful that an analysis on choice of law must be made in order to come to a reasoned decision as to which state's law has the most significant relationship to the claims raised here. That involves, as to Shapiro, comparing and contrasting California and New Jersey laws, and looking at the relevant Restatement section. None of these specific arguments has been presented by the parties. Indeed, the choice-of-law analysis is not only legally, but also factually, intensive. *See T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-04209, 2015 U.S. Dist. LEXIS 29678, at *11 (D.N.J. Mar. 11, 2015)(declining to engage in a choice-of-law analysis at the motion to dismiss stage when facts are deficient); *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010)(finding that the district court must have enough factual information to conduct the choice of law analysis); *In re K—Dur Antitrust Litigation*, 338 F. Supp. 2d 517 (D.N.J. 2004); *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011). Without the benefit of a factual record, or arguments from the parties regarding each and every factor set forth by the Restatement, I am not prepared to make any findings as to which state law applies in this case, although Plaintiff Shapiro is well advised that his California

class claims may not withstand a rigorous choice-of-law review, and in that case, he would then likely not be a proper class representative for out-of-state class members.[9]  Defendant may raise this issue again at the appropriate stage of this litigation.

### C.    New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 to -181, "provides relief to consumers from 'fraudulent practices in the market place.'" *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010) (quoting *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11 (2004)).  To properly plead a claim under the NJFCA, a consumer must plead "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011); *Lee*, 203 N.J. at 521.

In addition to these factors, "[i]t is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That is, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation

---

[9]    I note that Defendant does not otherwise argue that these California state law claims are not sufficiently pled under Rule 12(b)(6).

into a fraud allegation." *Frederico*, 507 F.3d at 200. However, courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 307 (D.N.J. 2013) (internal quotation omitted). Importantly, in the context of a class action, "the individual named plaintiffs' claims should each satisfy Rule 9(b) independently." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 597 (D.N.J. 1996); *see Bass v. Butler*, 116 Fed. Appx. 376, 385 (3d Cir. 2004).

For purposes of the NJCFA, New Jersey courts recognize three types of unlawful conduct: affirmative misrepresentations; omissions of material facts and violations of certain regulations promulgated under the statute. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009), aff'd, 374 Fed. Appx. 341 (3d Cir. 2010). Indeed, the common thread that pervades all types of unlawful conduct under the NJCFA is "[its] capacity to mislead." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) (citing *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977)). But, there are several differences between misrepresentations and omissions. *See Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001) ("This statutory scheme distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure to act"). For one, misrepresentations do not require a showing of intent or even actual deceit or fraud. *Cox*, 138 N.J. at 17-18; *Leon*, 340 N.J. Super. at 468; *see Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997) ("One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the

29

misrepresentation, negligence, or the intent to deceive."). Moreover, the misrepresentation need not be one of material fact. *Arcand*, 673 F. Supp. 2d at 297. In contrast, omissions consist of (1) knowingly concealed (2) material facts (3) with the intention that the consumer rely upon the concealment. *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 426 (App. Div. 2003) (citing *Feinberg v. Red Bank Volvo, Inc.*, 331 N.J. Super. 506, 511 (App. Div. 2000)).

Here, Defendant moves to dismiss Shapiro's NJCFA claim[10] on the bases that he has failed to allege unlawful conduct and ascertainable loss. I turn first to the element of unlawful conduct. Shapiro's basic theory of liability against Defendant is that he purchased the Alert Systems without knowing that there were defects that plagued his security systems which ultimately rendered them unusable. Although Shapiro couches Defendant's alleged wrongful conduct, in the context of the NJCFA, as misrepresentations, as well as omissions, the bulk of the Complaint focuses on Defendant's alleged concealment of known defects. In that regard, Shapiro bases his NJFC claim on three separate wrongful acts: 1) Defendant concealed from consumers that it designed and manufactured the Alert Systems with material, fundamental defects that would manifest both within and outside of Logitech's express or implied warranty periods; 2) Defendant concealed from its consumers that Logitech intended to discontinue the sale of the Alert Systems when Defendant knew that it could not repair or

---

[10]     Because I have dismissed Chernus as a plaintiff and because the Complaint is clear that the New Jersey consumer-related claims are brought solely by Shapiro, I will refer only to Shapiro when discussing this section of the Opinion.

replace because of a shortage of replacements parts; and 3) Defendant concealed from consumers that it was in breach and intended to breach its warranty obligations by selling defective Alert Systems.

As a preliminary matter, because the alleged unlawful conduct is grounded in omissions, I will apply Rule 9(b) with some flexibility. Indeed, the "heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009). As to the first alleged omission, Shapiro avers that Defendant "exclusively knew that its Alert Systems were fundamentally defective because Logitech designed, manufactured, and tested the Alert Systems using specially designed complex hardware and software technology of its own creation." Compl., ¶ 28. In that respect, Shapiro claims that "Logitech exclusively knew that the Alert Systems would and did experience a high rate of failure both in and outside the warranty period due to its fundamental design defects at the time it began marketing and selling the Alert Systems." In other words, Shapiro accuses Defendant of having knowledge of the Alert Systems' defects prior to selling the security systems, and Defendant allegedly concealed those facts. However, Shapiro's conclusory allegation regarding Defendant's knowledge of the defects does not meet the heightened pleading requirements. Nowhere in the Complaint does Shapiro explain the surrounding circumstances of Defendant's knowledge that its Alert Systems would not work as advertised. Rather, without any additional information, Shapiro speculates that Logitech must have known that its security systems

would not work because it designed and manufactured them. This kind of pleading does not suffice even under the more relaxed standard of Rule 12(b)(6), let alone Rule 9(b). Accordingly, I find that Shapiro's alleged omission in this regard to be insufficiently pled.

Next, Shapiro devotes much of the Complaint to Defendants' concealment of the Alert Systems' defects — after having been informed of issues by numerous dissatisfied consumers. On this theory, Shapiro avers that soon after consumers, including himself, purchased their Alert Systems, various defects began to manifest, which substantially affected the products' merchantability. Those consumers, allegedly, posted complaints online regarding the poor functionality and efficacy of the Alert Systems that eventually rendered the products inoperable. *See* Compl., ¶¶ 18-19. Shapiro alleges that Logitech was aware of these complaints, but the company, nonetheless, ignored the issues and intentionally refused to provide relief or to remedy the complained-of defects. *Id.* at ¶ 21. According to Shapiro, the software and hardware problems with the Alert Systems were so prevalent, Logitech decided, in the last quarter of 2012, to entirely discontinue the manufacture and sale of the Alert Systems by 2014; but, the company concealed this information from consumers who continued to purchase the Alert products. Shapiro goes on to plead that "Logitech's decision to discontinue the product negatively impacted the availability of replacement Alert Systems to consumers who were often told cameras were already 'backordered' and that Logitech would continue to try and upgrade and fix the product." *Id.* at ¶ 26. Allegedly, Logitech did not disclose to the public its

decision to discontinue until July 2014. *Id.* In that regard, Shapiro claims that "Logitech knew internally for nearly two full years that it had given up on the defective Alert Systems but continued to sell its remaining stock to unsuspecting customers who would eventually be stuck with significant investments in defective products that Logitech [was] unable to repair or replace." *Id.* Shapiro further claims that this omission led customers to continue to purchase the Alert Systems without knowledge of Logitech's concealments. *Id.* at ¶ 27 ("Logitech actively withheld all of this material information from consumers so that it could continue to sell its remaining supply of defective Alert Systems, take its profits, and then exit the home security industry altogether."). As to knowledge, Shapiro alleges that "[a]t a minimum, Logitech became aware of the fundamental defects in the Alert Systems soon after they hit the market due to the high level of customer complaints." *Id.* at ¶ 28.

Based on these allegations, I find that Shapiro has sufficiently alleged an actionable omission. That is, Defendants knowingly omitted material facts regarding the merchantability of the Alert Systems with the intention that the unsuspecting prospective consumers continue to purchase the products all the while without knowing that sales of the security systems would be discontinued and that Logitech would not be able to replace or repair them. That said, although this unlawful conduct is sufficiently pled for the most part, Shapiro, himself, has failed to allege that he was the type of consumer misled by Defendant's alleged wrongful concealment; the missing piece is when Shapiro purchased his Alert System. This fact is crucial because the only viable theory

of liability is that Defendant allegedly concealed material defects sometimes *after* it became aware of those defects through customer complaints. Because timing is a factor under this theory, *when* Shapiro purchased his system becomes an important allegation. If Shapiro purchased before Logitech had any knowledge of the systems' defects, Shapiro cannot allege that Defendant had intended for him to rely upon the concealment, since Shapiro would have purchased his system prior to the alleged wrongful act. Without knowing whether Shapiro was subjected to the wrongful conduct, he, as the class representative, cannot maintain an individual claim under the NJCFA.

However, with respect to ascertainable loss, I disagree with Defendant that Shapiro has not sufficiently alleged this element.[11] Ascertainable loss is set forth in N.J.S.A. 56:8-19, which authorizes a statutory remedy for "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act." *D'Agostino v. Maldonado*, 216 N.J. 168, 184-85 (2013). "[T]he plain language of the Act unmistakably makes . . . ascertainable loss a prerequisite for a private cause of action. An ascertainable loss under the NJCFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" *Id.* at 185 (internal quotation marks and citations omitted); *see Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558 (2009) (defining term "ascertainable loss" to "mean[] that plaintiff must suffer a definite, certain

---

[11]    Because I am giving leave for Shapiro to replead his NJCFA claim, I will assess whether ascertainable loss has been properly pled.

and measurable loss, rather than one that is merely theoretical") (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005)).

"There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *22 (D.N.J. Mar. 26, 2012). Either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle. *Id.* The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. *Id.* A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered. *Id.* Under the third theory, an ascertainable loss can include a nominal overcharge for which the plaintiffs have not made a pre-suit demand for a refund. *Id.*

Here, contrary to Defendant's arguments, Shapiro has sufficiently alleged ascertainable loss in the form of out-of-pocket expenses. Shapiro paid $269.99 for his Alert System, *see* Compl., ¶ 36, and all Alert Systems were allegedly sold at premium prices, ranging from $299.99 to $349.99. *Id.* at ¶ 16. Shapiro further alleges that each of the Alert Systems sold, including his, became completely inoperable. *Id.* at ¶¶ 22-23, 27, 38. According to Shapiro, "[a]s a direct and proximate result of Logitech's conduct, consumers purchased Logitech Alert System[s] they would not have otherwise purchased, [and] paid more for Logitech Alert Systems then they would have otherwise paid . . . ." *Id.* at ¶ 32. Based on these allegations, Shapiro and the putative class alike received

"something less than, and different from," what they reasonably expected to receive. Moreover, Defendant's alleged conduct deprived Shapiro of the use of the product. These are recognized forms of ascertainable loss under the NJCFA. *See Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*, No. A-5207-05T3, 2008 N.J. Super. Unpub. LEXIS 1095, at *47 (App. Div. Mar. 12, 2008); *Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 87-91, 663 A.2d 643 (Ch. Div. 1995); *see, e.g., Lee,* 203 N.J. at 526-28 (stating that if plaintiffs proved allegations that defendants made false claims about a dietary supplement, product is a worthless "bottle of broken promises" and each purchase, unless refunded, "is an out-of-pocket loss"); *Furst*, 182 N.J. at 9 ("when a merchant violates the [CFA] by delivering defective goods and then refusing to provide conforming goods, a customer's ascertainable loss is the replacement value of those goods"); *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 54 (2017).

Accordingly, I find that Shapiro has alleged sufficiently an ascertainable loss. However, because Shapiro has not satisfied the pleading requirements for unlawful conduct, Shapiro fails to state an individual claim under the NJCFA. In lieu of dismissal, Shapiro shall be given leave to amend his Complaint to cure the deficiencies discussed above.

### D.     Breach of Express Warranty

"Express warranties in New Jersey are governed by Article 2 of the state's Uniform Commercial Code (UCC)." *Henderson v. Volvo Cars of North America, LLC*, No. 09-4146, 2010 U.S. Dist. LEXIS 73624, at *20 (D.N.J. Jul. 21, 2010)

(citing N.J.S.A. 12A:2-101, *et seq.*). Section 12A:2-313 provides, in pertinent part:

> Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. 12A:2-313.

Under the UCC, "'parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.'" *Petri Paint Co. v. Omg Ams., Inc.*, 595 F. Supp. 2d 416, 422 (D.N.J. 2008)(quoting N.J.S.A. 12A:2-719, cmt. 1). In that regard, N.J.S.A. 12A:2-719 states that a contract "may limit of alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of the non-conforming goods parts" unless the remedy fails its essential purpose. *Petri Paint*, 595 F. Supp. 2d at 422 (quoting N.J.S.A. 12A:2-719(1)(a)).

To adequately plead a breach of express warranty claim under New Jersey law a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Cooper*, 374 Fed. Appx. at 253 (quotation and citation omitted).

Here, there is no dispute that Logitech provided a Limited One Year Warranty (the "Warranty"), which expressly limits the warranty to hardware defects. The Warranty also provides that the exclusive remedy is either repair or replacement of the hardware, or refund of the purchase price. *See* Compl., ¶ 17. Plaintiffs allege that Logitech also warranted in writing that the Alert Systems would be merchantable for their ordinary purpose of providing reliable digital home security systems for the duration of the one-year express warranty. *Id.*

According to Shapiro, he began experiencing problems with his security system soon after he purchased it, and within Logitech's warranty period. *Id.* at ¶ 37. Specifically, Shapiro dealt with connectivity malfunction where his Alert System was not detecting the cameras, and the SD card also failed. *Id.* Eventually, Shapiro's system was rendered inoperable by these mechanical issues. *Id.* at ¶ 38. Subsequently, Shapiro contacted Logitech's customer service and reported the defects, as well as filed multiple complaints. Shapiro claims that Logitech never resolved the reported problems and he did not receive any refund of the purchase price. *Id.* at ¶¶ 38-39. Based on the pleadings, Logitech failed to "honor its warranty obligations." *Id.* at ¶ 39.

Defendant argues that Shapiro did not allege that he experienced any hardware issue, which is the only type of defect expressly covered under the Warranty. While Shapiro does not explicitly used the word "hardware," based on a fair reading of the Complaint, I find that it adequately alleges defects that fall within the Warranty's coverage. As the Complaint makes clear, the Alert System is a combination of hardware, software and services necessary to work

together to provide continuous home security.  *Id.* at ¶ 15.  In that connection, Shapiro alleges that he had issues with connectivity of his camera to the Alert System, which could have originated from a particular hardware failure.  Shapiro also allegedly experienced failure of the SD card — a hardware component of the system. While Defendant argues that the problems Shapiro experienced were related to the Alert System's software, at this pleading stage, I find that a reasonable inference can be drawn from the Complaint that faulty hardware, which falls within the ambit of the Warranty, may have caused Shapiro's Alert System to become inoperable.

Finally, Defendant argues that Shapiro did not allege that Logitech "refused" to provide Shapiro one of the exclusive remedies provided under the Warranty, *i.e.*, repair, replacement or refund.  I do not find Defendant's hyper-technical argument to be persuasive.  Indeed, there are no magic words that Shapiro must use in his pleadings to sufficiently allege a breach of the express warranty.  Rather, Shapiro has asserted that Defendant, after being informed by him multiple times, failed to honor its obligations under the Warranty.  More particularly, Shapiro was denied any repair, replacement or refund for his alleged failed product.  Those allegations sufficiently allege a breach.

Accordingly, I find that Shapiro has stated a claim for breach of the express warranty.

### E.    Breach of Implied Warranty

In New Jersey, the warranty of merchantability is implied by law in every contract for the sale of goods. *See* N.J.S.A. 12A:2-314; *In re Toshiba Am. HD DVD*

*Mktg. & Sales Practices Litig.*, No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *50 (D.N.J. Sept. 11, 2009). New Jersey's UCC provides the statutory basis for a breach of the implied warranty, stating in relevant parts:

> (1) [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . .
>
> (2) Goods to be merchantable must be at least such as . . .
>
>> (c) are fit for the ordinary purposes for which such goods are used; and . . .
>>
>> (f) conform to the promises or affirmations of fact made on the container or label if any.

N.J.S.A. § 12A:2-314(1), (2)(c) & (f). Thus, a breach of the implied warranty of merchantability occurs when the product at issue is defective or not fit for the ordinary purpose for which it was intended. *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).[12]

However, under the UCC, the merchant may "exclude or modify the implied warranty of merchantability or any part of it . . . ." N.J.S.A. 12A:2-316(2). To do so, "the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." *Id.*; *see Pro-Spec Painting,*

---

[12]   To state such a claim, a plaintiff must allege "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or its property, (4) which were caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *In re Samsung Elecs. Am., Inc. Blu-Ray Class Action Litig.*, No. 08-663, 2008 U.S. Dist. LEXIS 105199, at *18 (D.N.J. Dec. 31, 2008).

*Inc. v. Sherwin-Williams Co.*, No. 16-2373, 2017 U.S. Dist. LEXIS 73207, at *16 (D.N.J. May 12, 2017); *Rapid Models & Prototypes, Inc. v. Innovated Solutions*, No. 14-277, 2014 U.S. Dist. LEXIS 177645, at *20 (D.N.J. Dec. 29, 2014).

Here, Defendant argues that the Warranty specifically and conspicuously limited the implied warranty of merchantability to hardware and the one-year period. *See* Logitech Limited Hardware Warranty, p. 2.[13] ("ANY IMPLIED WARRANTY OR CONDITION OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURSPOSE ON THIS HARDWARE PRODUCT IS LIMITED IN DURATION TO THE DURATION OF THE APPLICABLE LIMITED WARRANTY PERIOD FOR YOUR PRODUCT"). Defendant further contends that for the same reasons why Shapiro has failed to allege a breach of express warranty claim, their implied warranty claim also fails. In response, Shapiro does not dispute that the language of the Warranty expressly limited the broader implied warranty imposed by New Jersey law, such that it meets the requirements under the UCC, N.J.S.A. 12A:2-316(2). Therefore, as Defendant submits, the limitations on the implied warranty effectively renders that this warranty provides the same coverage as the express warranty provided by Logitech. To that end, because I have already found that Shapiro has stated a claim for the breach of the express warranty, for the same reasons, I find that he has likewise stated a claim for the breach of the implied warranty.

---

[13] While the warranty document was not attached to the Complaint, this Court can nevertheless consider it because the Complaint references the Warranty, and it is integral to the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**F.     Unjust Enrichment**

Defendant moves to dismiss Shapiro's unjust enrichment claim on the basis that New Jersey does not recognize such a claim as an independent theory of tort liability.  I agree.

New Jersey law does not recognize unjust enrichment as an independent tort cause of action.  *Cafaro v. HMC*, No. 07-2793, 2008 U.S. Dist. LEXIS 71740, 2008 WL 4224801, at *37 (D.N.J. Sept. 8, 2008)(finding that the plaintiffs' unjust enrichment claim should be dismissed because the allegations sounded in tort and not in quasi-contract); *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004); *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 U.S. Dist. LEXIS 105413 (D.N.J. Dec. 9, 2008).  Rather, "unjust enrichment . . . requires that plaintiff show that [he] expected remuneration from the defendant at the time it performed or conferred a benefit on defendant." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 555 (1994).

Here, the conduct underlying Shapiro's unjust enrichment claim, as alleged in the Complaint, sounds in tort.  In fact, Shapiro does not allege that he performed or otherwise conferred a benefit on Defendant under a quasi-contractual relationship with the expectation of remuneration.  *See* Compl., ¶¶ 72-77.  Instead, Shapiro asserts tort-based claims against Defendant for which he clearly did not anticipate or expect remuneration.  Assuming the facts alleged in the Complaint are true, Shapiro could not have anticipated -- let alone expected -- remuneration for Defendant's alleged fraudulent concealment. As a result, Shapiro's claim for unjust enrichment fails to state a claim on this basis

alone. But, there is another reason why this claim fails, which was not raised by the parties.

In New Jersey, "[t]o establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110 (2007) (quoting *VRG Corp.*, 135 N.J. at 554). A claim of unjust enrichment, thus, requires that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim. *Maniscalco*, 627 F. Supp. 2d at 505-06. In that connection, "it is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998). For example, in *Cooper v. Samsung Elecs. Am., Inc.,* No. 07-3853, 2008 U.S. Dist. LEXIS 75810 (D.N.J. Sep. 29, 2008), aff'd by *Cooper v. Samsung Elecs. Am., Inc.,* 2010 U.S. App. LEXIS 6602 (3d Cir. N.J., Mar. 30, 2010), the plaintiff filed a claim for unjust enrichment against Samsung after purchasing an allegedly defective television from a retailer, Ultimate Electronics. *Id.* at *3-4. The court concluded that despite the fact that the television was manufactured by Samsung, there was no relationship conferring any direct benefit on Samsung through the plaintiff's purchase from the retailer, and that therefore plaintiff failed to establish unjust enrichment. *Id.* at *30-31.

Like in *Cooper*, a direct relationship is lacking here between Shapiro and Logitech. Shapiro does not allege that he purchased any products directly from Logitech. In fact, there is no allegation as to where Shapiro purchased his Alert

System, only that he purchased one for $269.99 after reviewing Logitech's marketing materials. *See* Compl., ¶ 36. Without a direct relationship, Shapiro's individual unjust enrichment claim cannot lie. Accordingly, based on the foregoing, Shapiro's unjust enrichment claim is dismissed with prejudice.

### G. Declaratory Relief

Lastly, Shapiro includes a claim for "declaratory and injunctive relief." Compl., ¶¶ 89-91. However, declaratory relief, as its name implies, is a remedy, not a cause of action. Accordingly, the Court dismisses the Eighth Cause of Action with prejudice. *See Chruby v. Kowaleski*, 534 Fed. Appx. 156, 160 n.2 (3d Cir. 2013) (affirming dismissal of a claim that was solely for a remedy); *Cole v. NIBCO*, No. 13-7871, 2015 U.S. Dist. LEXIS 65960, at *41 (D.N.J. May 20, 2015).


**CONCLUSION**

For the all the reasons express herein, Defendant's motion to dismiss is **DENIED** in part and **GRANTED** in part. Plaintiff Chernus is dismissed from suit as the Court lacks personal jurisdiction over his claims. As such, all Pennsylvania state law claims asserted in the Complaint are dismissed. Plaintiff Shapiro's NJCFA claim is dismissed without prejudice. He is given leave to amend the Complaint to cure the deficiencies with regard to that claim within 15 days from the date of the Order accompanying this Opinion. In addition, Plaintiffs' unjust enrichment and declaratory relief causes of action are dismissed with prejudice. Defendant's motion to dismiss for lack of standing is denied, as well as its motion to dismiss Plaintiffs' breach of express and implied

warranty claims.  Finally, Defendant's request to dismiss the nationwide class is denied without prejudice.


DATED: April 27, 2018                                    /s/ Freda L. Wolfson
                                                         Hon. Freda L. Wolfson
                                                         United States District Judge