*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ED SHAPIRO, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | Civil Action No. 17-00673 (FLW) (TJB) |
| v. | : : : | **OPINION** |
| LOGITECH, INC., | : : | |
| Defendant. | : : | |

**WOLFSON, United States District Judge:**

Plaintiff Ed Shapiro ("Plaintiff" or "Shapiro"), brought this putative nationwide (except California consumers) class action, alleging, *inter alia*, consumer fraud, breach of warranty, and unjust enrichment arising from the purchase of a self-installed and operated digital home video surveillance system known as the "Alert System," manufactured and sold by Defendant Logitech, Inc. ("Defendant" or "Logitech"). After this Court previously dismissed certain claims and dismissed Shapiro's co-plaintiff from the suit, Plaintiff filed a Second Amended Complaint ("SAC"). Pending before the Court are 1) Defendant's motion to compel arbitration, which is premised on an arbitration agreement between Plaintiff and non-party Amazon.com ("Amazon"), from whom Plaintiff bought the Alert System, and which, according to Defendant, obligates that the parties arbitrate their dispute, and, 2) Defendant's motion to strike and/or dismiss Plaintiff's nationwide class allegations under California law because his California consumer fraud claims are not viable, as New Jersey law applies.

1

For the following reason, Defendant's motion to compel arbitration is denied, but Defendant's motion to dismiss is granted, as New Jersey and not California law applies. Thus, all claims, besides those brought by Plaintiff individually and on behalf of a putative class of New Jersey residents under New Jersey law, are dismissed.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The full factual background in this matter is laid out in this Court's previous opinion, *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481 (D.N.J. Apr. 27, 2018). In brief, Plaintiff alleges that Logitech's Alert System, which it had aggressively marketed and sold to consumers, began experiencing camera failures, issues with the products staying powered up, large gaps in recorded videos, connectivity issues, malfunction of SD (memory) cards, as well as false and/or failed security alerts. SAC at ¶¶ 9, 18. Plaintiff alleges that Logitech responded inadequately to consumer complaints regarding theses malfunctions, and, in the last quarter of 2012, decided to discontinue entirely the manufacture and sale of the Alert Systems by 2014. *Id.* at ¶ 26. Plaintiff alleges, however, that "Logitech knew internally for nearly two full years that it had given up on the defective Alert Systems but continued to sell its remaining stock to unsuspecting customers who would eventually be stuck with significant investments in defective products that Logitech [was] unable to repair or replace." *Id.* Plaintiff further claims that this fraudulent omission led customers to continue to purchase the Alert Systems without knowledge of Logitech's concealments. *Id.*

Plaintiff initially brought suit with co-Plaintiff Steven Chernus ("Chernus") on behalf of themselves and a proposed nationwide class defined as: "All purchasers of Logitech Alert Systems in the United States (except California)." First Amended Complaint ("FAC") at ¶ 40. In addition, Chernus, a resident of Pennsylvania, and Shapiro, a resident of New Jersey, sought to

2

represent sub-classes of consumers in Pennsylvania and New Jersey, respectively. They asserted claims against Logitech, a California corporation, under i) California's Unfair Competition Law ("ULC"), Bus. & Prof. Code §§ 17200, *et seq.*; ii) the California Consumer Legal Remedies Act ("CLRA"), Civ. Code §§ 1750, *et seq.*; iii) the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq.; and iv) the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("PUTPCPA"), 73 P.S. § 201-1, *et seq.*, as well as New Jersey and Pennsylvania common law claims of breach of express and implied warranty and unjust enrichment. FAC at ¶¶ 53-91. On September 15, 2017, Defendant moved to dismiss these claims.

The Court's April 27, 2018 Opinion dismissed the claims of Chernus, as well as the Pennsylvania state law claims, on personal jurisdictional grounds. *Chernus*, 2018 WL 1981481, at *6. The Court also dismissed, with prejudice, Plaintiffs' unjust enrichment and declaratory relief causes of action. *Id.* at *16-17. The Court denied Defendant's motion to dismiss for lack of standing and its motion to dismiss the breach of express and implied warranty claims as to Shapiro. *Id.* at *8, 14-15. With respect to Shapiro's claims under New Jersey law, the Court dismissed his NJCFA claim without prejudice, permitting Plaintiff to substantiate his allegations regarding when he purchased his Alert System. *Id.* at *11-14. Finally, and most crucially for the present motion, the Court deferred ruling on Defendant's arguments regarding whether Plaintiff Shapiro, a New Jersey resident, could pursue nationwide class claims under California consumer protection law, as the parties had not fully briefed the choice of law issue, but invited Defendant to "raise this issue again at the appropriate stage of this litigation." *Id.* at *10.

On May 14, 2018, Plaintiff timely amended his complaint by adding his purchase date "in October of 2013" as well as additional facts regarding Logitech's alleged awareness and concealment of Alert Systems' defects dating back to at least March 2011. SAC at ¶¶ 28-41. The

SAC added no new claims against Defendant. On June 12, 2018, Defendant filed the present motion, arguing for the first time that the Conditions of Use Agreement applicable to Plaintiff's purchase of the Alert System from Amazon, compelled Plaintiff to arbitrate its dispute with Defendant. Defendant also renewed its argument that New Jersey law applies, thus barring Plaintiff from pursuing nationwide class claims under California law. The facts pertinent to these arguments are as follows.

### A. Arbitration Agreement in Amazon's Conditions of Use

Plaintiff alleges that he "purchased a Logitech Alert System for $296.99 in October of 2013." *Id.* at ¶ 41. Defendant argues that, based on an internet archival snapshot tool called the "Wayback Machine," Plaintiff necessarily agreed to Amazon's "Conditions of Use" upon making his purchase from Amazon, which would have stated, in relevant part:

> Welcome to Amazon.com. Amazon Services LLC and/or its affiliates ("Amazon") provide website features and other products and services to you when you visit or shop at Amazon.com, use Amazon products or services, use Amazon applications for mobile, or use software provided by Amazon in connection with any of the foregoing (collectively, "Amazon Services"). Amazon provides the Amazon Services subject to the following conditions.
>
> \*\*\*
>
> DISPUTES
>
> Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.
>
> \*\*\*

> We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. If for any reason a claim proceeds in court rather than in arbitration we each waive any right to a jury trial. We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

Declaration of Michael J. O'Malley ("O'Malley Decl.") at ¶¶ 15-16. According to Defendant, the arbitration clause in these Conditions of Use binds Plaintiff to arbitrate its dispute with Defendant.

### B. Choice of Law Allegations

Plaintiff alleges that he was a citizen and resident of New Jersey at all relevant times, purchased a Logitech Alert System in New Jersey, and suffered damages due to Logitech's conduct in New Jersey. SAC at ¶ 6. This damage occurred because, while in New Jersey, Plaintiff allegedly "relied on Logitech's deceptive marketing, he purchased an expensive Logitech Alert System he would not have otherwise purchased and/or paid more for the Logitech Alert System than he would have otherwise paid." *Id* at ¶ 44. Plaintiff alleges that Defendant is a California corporation with its North American headquarters and principal place of business located at 7700 Gateway Boulevard, in Newark, California. *Id.* at ¶ 7. In that regard, Plaintiff further alleges that "Logitech's decision to conceal material facts relating to defects in the Alert Systems, its warranty breaches, and its decision to discontinue the Alert Systems emanated from its corporate headquarters," *id.* at ¶ 39, and that "the wrongful conduct alleged herein, including but not limited to Logitech's decision making…regarding the development, marketing, and sale of Alert Systems occurred in the state of California." *Id.* at ¶¶ 58, 63, 68, 72.

## II. LEGAL STANDARD

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate....'" *Harris v. Green Tree*

5

*Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA was designed by Congress "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536–37 (D.N.J. 2013) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). To achieve this end, the FAA provides that contract provisions containing arbitration clauses "shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." 9 U.S.C. §§ 2–4. Collectively, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). Therefore, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Mercury Constr. Corp.*, 460 U.S. at 24–25).

When a district court is presented with a motion to compel arbitration, it must affirmatively answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of that agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). In performing this inquiry, courts apply "ordinary state-law principles that govern the formation of contracts," *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations and citations omitted), and, "when determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be

said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986)).

### B. Motion to Dismiss

Defendant also moves to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."

7

*Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

Under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## III. DISCUSSION

### A. Arbitration Agreement

Defendant argues it is a third-party beneficiary of the arbitration agreement that Plaintiff executed by purchasing the Alert System from non-party Amazon, thus binding the parties into arbitration. Plaintiff argues that the arbitration agreement, if it applies at all, binds Plaintiff only to arbitrate disputes with Amazon, not a non-signatory seller on Amazon's marketplace like Logitech.[1]

---

[1] Plaintiff initially argues that that the arbitration agreement contained in Amazon's Conditions of Use is inadmissible evidence, as Defendant obtained it through "The Wayback Machine," an internet archive, without properly authenticating it. However, as Logitech thereafter submitted declarations from Amazon representatives attesting that the arbitration agreement and that all transactions on the Amazon website were subject to such an agreement, the Court will accept it

8

Although under the FAA, there is a "presumption" to favor arbitration when possible, the general "presumption in favor of arbitration does not extend…to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (citations omitted). Under New Jersey law "there is no dispute that a non-signatory cannot be bound to arbitrate unless it is bound 'under traditional principles of contract and agency law' to be akin to a signatory of the underlying agreement."[2] *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, *S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (quoting *Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)). In New Jersey, "[i]t is a fundamental premise of contract law that a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement." *Ross v. Lowitz*, 222 N.J. 494, 514 (2015) (citations omitted). "The principle that determines the existence of a third party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." *Broadway Maint. Corp. v. Rutgers, The State Univ.,* 90 N.J. 253, 259 (1982).

---

as admissible, notwithstanding Plaintiff's contention that Defendant improperly introduced such evidence in its reply brief. *See Main v. Gateway Genomics, LLC*, No. 15-2945, 2016 WL 7626581, at *11 (S.D. Cal. Aug. 1, 2016) (allowing defendant to introduce arbitration agreement in Amazon's Conditions of Use in its reply brief).

[2] The parties have not briefed whether the law of New Jersey or Washington, the state in which the contract was written, governs the agreement. Plaintiff has cited both Washington and New Jersey law in his brief, and, as there does not appear to be a conflict between the laws (i.e. they both require an "intent to bind" the non-signatory party), no actual conflict between the laws exists. *Compare Warner v. Design & Build Homes, Inc.*, 128 Wash. App. 34, 43 (2005) *with Ross v. Lowitz*, 222 N.J. 494, 514 (2015). I will, thus, apply New Jersey law.

Here, the available evidence does not support a finding that Logitech is a third-party beneficiary of the Conditions of Use Agreement. The only evidence that Defendant offers in this regard is that the Conditions of Use governing the arbitration agreement state that "any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration." O'Malley Decl. at ¶¶ 15-16. As the contract does not limit the arbitration agreement to "any dispute between You and Amazon," according to Defendant, the contract "clearly contemplates" that the agreement would confer a benefit to a non-signatory such as Logitech as a third party beneficiary.[3] ECF No. 46-1 at 16.

While broad, the language that Defendant highlights does not clearly and unambiguously convey that the contracting parties—Plaintiff and Amazon—intended that the benefit of arbitration should be conferred to third-parties, like Logitech, who sell their products through the website. Indeed, the arbitration agreement, contained with the Conditions of Use, does not explicitly mention that Logitech or any other seller would be bound by the arbitration clause. It is a fundamental principle of contract law, that when there is such ambiguity regarding third-party beneficiary status, "it is necessary to examine the pertinent provisions in the agreement and the

---

[3] Defendant also asserts that the doctrine of equitable estoppel allows it, as a non-signatory, to enforce the arbitration agreement. "[T]he combination of the requisite nexus of the claim to the contract together with the integral relationship between the non-signatory and the other contracting party [is] ... a sufficient basis to invoke estoppel." *EPIX Holdings Corp. v. Marsh & McLennan Cos., Inc.*, 410 N.J. Super. 453, 466 (App. Div. 2009) (internal citations omitted). Defendant's equitable estoppel argument fails because it cannot demonstrate a "close relationship" between Defendant and Amazon or between the claims and the Conditions of Use. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *8-9 (D.N.J. May 8, 2017) (denying defendant car manufacturer's motion to enforce an arbitration clause in purchase agreement, to which it was not a signatory, on basis of equitable estoppel because "the allegations in the Complaint indicate… Plaintiffs each purchased and/or leased their vehicle from an authorized car dealership" and the "purchase and/or lease agreement was between themselves *and the dealership.*") (emphasis in original).

surrounding circumstances to ascertain that intent." *Broadway Maint. Corp.*, 90 N.J. at 260 (citing *Talcott v. H. Corenzwit and Co.*, 76 N.J. 305, 312 (1978)). At their outset, the Conditions of Use state that Amazon provides its "Amazon Services" to "you" (the customer) "subject to the following conditions." Framed this way, the Conditions of Use—including the arbitration agreement contained therein—appear to apply to the relationship between Amazon and the customer only, not any non-signatory seller, like Logitech. Reading the contract as a whole, then, "any dispute," refers to any dispute between Amazon and the customer, the only parties that the Conditions of Use explicitly govern. In this context, Defendant, as the party seeking to invoke arbitration involving a non-signatory, bears a particularly heavy burden of proving intent. As the agreement does not indicate an intent to specifically bind Plaintiff into arbitration with Logitech, a purported third-party beneficiary, and Defendant provides no other evidence of intent, Defendant has not met its burden.

This is the same conclusion reached in *Anderson v. Logitech, Inc.,* Case No. 17-cv-6104, a related case currently pending in the U.S. District Court for the Northern District of Illinois, where Logitech consumers brought suit based on the same facts and general legal theories asserted in this matter. There, Logitech also moved to compel arbitration based on the exact same Conditions of Use. In a December 11, 2018 Order, the court denied the motion, rejecting Logitech's third-party beneficiary argument, noting that "Amazon's catch-all phrasing falls short of demonstrating an intent to confer a benefit on Logitech," as "the linchpin of the analysis is the parties' intention" and "[t]here is no evidence that Amazon intended to confer this benefit on Logitech specifically." ECF No. 60-1 at 6-7. *See also Main v. Gateway Genomics, LLC,* 15-2945, 2016 WL 7626581, at *13 (S.D. Cal. Aug. 1, 2016) (Amazon's "Conditions of Use do not reference Defendant, or any other merchant, or reflect an intent to benefit Defendant").

Moreover, accepting Defendant's reading of the Conditions of Use could have serious, wide-ranging, and unintended implications. In *Anderson*, the court noted that "if Logitech's position were accepted, it would enable all manufacturers selling through Amazon (a gargantuan number) to invoke Amazon's end-user arbitration clause. That cannot stand." ECF No. 60-1 at 6. Along similar lines, the court in *Main*, a case where the defendant seller of an "early gender test" sought to impose arbitration on a plaintiff who had purchased the product on Amazon, dismissed the defendant's argument that Amazon's Conditions of Use govern as "unreasonable":

> If the Court adopted the position advanced by Defendant, it would mean that any entity that sells products through Amazon could invoke Amazon's Conditions of Use to compel arbitration. This position is not only unreasonable, but rebuts any suggestion that Amazon or [plaintiff] specifically intended to benefit Defendant through requiring and agreeing to Amazon's Conditions of Use. Absent any facts to suggest that Defendant was an intended beneficiary of Amazon's Conditions of Use, Defendant cannot enforce the arbitration provision contained therein as a third party-beneficiary.

*Main*, 2016 WL 7626581, at *13. In fact, if accepted, Defendant's interpretation, here, would go further than even the scenarios envisioned by the *Anderson* or *Main* courts. Taking Defendant's position to its logical conclusion would mean that any person or company with *any connection* whatsoever to the transaction could demand arbitration for any claim tangentially related to the transaction. For instance, a private mail delivery service could demand arbitration via Amazon's Conditions of Use if its delivery man committed a tort while delivering an Amazon package. Such a conclusion, as the court in *Main* rightly noted, flies in the face of reason and undermines any suggestion that the parties specifically intended that Logitech benefit as a third-party beneficiary.[4]

---

[4] Moreover, even if Defendant could have enforced the agreement as a third-party beneficiary, Defendant has likely waived its right to enforce it by not raising the issue until now. Waiver can occur when the party opposing the arbitration demonstrates sufficient prejudice arising from the delay of the party seeking arbitration in making its demand. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 223 (3d Cir. 2007). Here, Defendant does not contest Plaintiff's assertion that it

Thus, Defendant's motion to compel arbitration is denied.

**B. Choice of Law**

Defendant also moves to dismiss on choice of law grounds. As a federal court sitting in diversity, I apply the choice-of-law rules of New Jersey to determine the controlling law. *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496 (1941); *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008). New Jersey has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 155 (2008). "[T]he first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Id.* (quoting *Lebegern v. Forman,* 471 F.3d 424, 430 (3d Cir.2006) (further citation omitted)). "If there is not an actual conflict, the inquiry is over." *Lebegern,* 471 F.3d at 428 (citations omitted). If, however, an actual conflict is found to exist, the inquiry proceeds to the second step, in which "the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013) (quoting *Camp Jaycee*, 197 N.J. at 144)).

1. <u>Actual Conflict Between NJCFA and Califorinia's Consumer Protection Laws</u>

With regard to the first prong of the analysis, rather than examining "the substance of the potentially applicable laws," Plaintiff argues that the "record is still too incomplete to consider

---

knew about the arbitration clause in January 2017, when Plaintiff filed suit, but delayed raising the issue until now. Because Defendant, as a non-signatory, cannot compel arbitration, I decline to examine all of the six nonexclusive factors that the Third Circuit identified as to guide the prejudice inquiry. *See Hoxworth v. Blinder, Robinson, & Co.*, 980 F.2d 912, 926 (3d Cir. 1992). However, I note that the Third Circuit has generally found prejudice when delays "were closer to ten months," and here, Defendant waited close to 18 months before raising the issue. *See Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 455 (3d Cir. 2011).

13

the threshold inquiry of whether an actual conflict of laws exists." ECF No. 50 at 33. However, Plaintiff has not shown how factual development of the record would impact the choice of law analysis *vis-à-vis* a conflict between New Jersey and California laws. Rather, in looking at the substance of the NJCFA and the CLRA and UCL, "courts in this District have recognized that the NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL." *Gray v. BMW N. Am., LLC,* 22 F. Supp. 3d 373, 380 (D.N.J. 2014) *(citing Maniscalco v. Brother Int'l Corp. (USA),* 793 F. Supp. 2d 696, 704 (D.N.J. 2011)); *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-07849, 2013 WL 5574626, at *7 (D.N.J. Oct. 9, 2013); *Feldman v. Mercedes-Benz USA, LLC*, No. 11-00984, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012).

Indeed, the NJCFA requires Plaintiffs to prove three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Majdpour*, 2013 WL 5574626, at *7 (quoting *Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 557 (2009)). "In place of the traditional reliance element of fraud and misrepresentation," the act "require[s] that plaintiffs demonstrate that they have sustained an ascertainable loss." *Id.* (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 391 (2007)). By contrast, both the UCL and CLRA require a showing of "actual reliance to satisfy the standing requirement of section 17204 [of the UCL]," *id.* (quoting *In re Tobacco II Cases,* 93 Cal.Rptr.3d 559 (Cal. 2009)), and "actual reliance must be established for an award of damages under the CLRA," *id.* (quoting *Cohen v. DIRECTV, Inc.,* 101 Cal.Rptr.3d 37, 47–48 (Cal. Ct. App. 2009)). Therefore, as the "substance" of the laws conflict, I proceed to the second step of the analysis. *See id.* (citing *Camp Jaycee,* 197 N.J. at 143).

2. <u>Most Significant Relationship Test</u>

Under the second step of the analysis, this Court must determine which state has the "most significant relationship" to the claim at issue by weighing the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action. *See, e.g., Nafar v. Hollywood Tanning Sys.,* 339 Fed.Appx. 216, 220 (3d Cir. 2009) (citing *Agostino v. Quest Diagnostics Inc.,* 256 F.R.D. 437, 463 (D.N.J.2009)); *Camp Jaycee,* 197 N.J. at 143–44. Because Plaintiff asserts claims sounding in fraud or misrepresentation, the Court applies the conflict of laws analysis of Section 148. Restatement (Second) of Conflict of Laws § 148 (1971); *see also, e.g., Agostino,* 256 F.R.D. at 462; *Nafar,* 339 Fed.Appx. at 221. Here, as Plaintiff alleges the misrepresentations were not made and received in the same state, the proper choice of law analysis involves § 148(2) of the Restatement, which uses six factors to determine the state with the most significant relationship to the case. *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 181 (3d Cir. 2014). Those factors are as follows:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id. (*quoting Restatement (Second) of Conflict of Laws § 148(2)). The factors enumerated in § 148(2) "are to be construed in light of the principles set forth in § 6 of the Restatement, which

include (l) the interests of interstate comity, (2) the interests of the parties, (3) the interests underlying the field of tort law, (4) the interests of judicial administration, and (5) the competing interests of the states." *Id.* at 182 (internal citation omitted).

As an initial matter, as with the first prong, Plaintiff argues that it is premature to decide which state has "the most significant relationship" with the case, which must wait until discovery is complete and/or summary judgment or class certification proceedings are scheduled. In making this argument, Plaintiff relies, in part, on my previous motion to dismiss opinion, which, according to Plaintiff, "contemplated the issues being litigated once discovery was taken and the litigation had matured." ECF No. 50 at 32. Plaintiff is mistaken. In that opinion, I stated that "[w]ithout the benefit of a factual record, *or arguments from the parties regarding each and every factor set forth by the Restatement*, I am not prepared to make any findings as to which state law applies in this case," but I permitted Defendant to "raise this issue again at the appropriate stage of this litigation." *Chernus*, 2018 WL 1981481, at *10 (emphasis added). In accordance with that invitation, Defendant now raises the issue again, providing arguments as to the factors set forth in the Restatement, and explaining why further factual development is unnecessary.

To that end, Defendant contends—and Plaintiff does not contest—that there are no factual disputes regarding *any* of the six Restatement factors, at least three of which favor New Jersey law. Instead, Plaintiff merely points to a single factor that Defendant concedes favors California—the place where the alleged misrepresentations were made—and argues that this lone factor should outweigh the others. Thus, given that there is no dispute about how further development of the factual record might impact the Restatement factors, and with the benefit of the parties' legal arguments on this topic, the Court can decide the choice of law issue without

awaiting further discovery. *See Gray*, 22 F.Supp. 3d at 380 ("Although full factual development is often necessary in order to properly weigh the Restatement factors, the Third Circuit frequently determines choice of law questions at the motion to dismiss phase.") (citations omitted); *see also Cooper v. Samsung Elecs. Am., Inc.,* 374 F. App'x 250, 255 n. 5 (3d Cir. 2010) ("We reject [plaintiff's] argument that the District Court erred in resolving the choice-of-law determination as to his statutory consumer fraud act claim at the motion to dismiss stage, rather than wait until the class certification stage"); *Majdipour*, 2013 WL 5574626, at *7 (expressly rejecting Plaintiff's argument that choice of law analysis was premature and rejecting need for further discovery).

Turning to the analysis, there is no dispute that at least three of the six factors favor application of New Jersey law. As to factors (a) and (b)⎯the place where Plaintiff acted in reliance upon Defendant's representations, and the place where Plaintiff received the representations—the SAC is clear that Plaintiff resides in New Jersey, purchased the Alert System in New Jersey, "suffered damages" in New Jersey, and, while there, "prior to purchase, [he] viewed Logitech's marketing materials for Logitech Alert Systems . . . and relied on Logitech's deceptive marketing . . . ." SAC at ¶¶ 6, 44. Factor (d)— the domicile, residence, nationality, place of incorporation and place of business of the parties— also weighs in favor of New Jersey, as "in cases of pecuniary loss…'[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant' because 'financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.'" *Maniscalco*, 709 F.3d at 208 (quoting Restatement (Second)

of Conflict of Laws § 148 cmt. i.). Factor (e) is inconclusive[5] and (f), which only is relevant in contract actions, is inapplicable to Plaintiff's claims.

Thus, the only remaining factor that points in favor of application of California law is factor (c), "the place where defendant made the representations." But, although it is undisputed that Logitech is a California company or that the allegedly misleading statements emanated from its marketing department in California, the case law is clear "that this single contact—factor *(c)*—does not warrant applying [California] law." *Maniscalco*, 709 F.3d at 209. In *Maniscalco*, the named plaintiff, a South Carolina resident, brought a putative class action against defendant Brother International Corp. for failing to disclose certain design defects with respect to some of the company's printers. *Maniscalco*, 709 F.3d at 204. The plaintiff claimed that defendant's wrongful conduct violated the NJCFA. The Third Circuit affirmed my finding on summary judgment that the factors weighed in favor of applying the law of plaintiff's home state, *i.e.*, South Carolina, and not New Jersey, the state where the defendant was headquartered, because South Carolina had the most significant relationship with the litigation. *Id.* at 207-208. In so holding, the Third Circuit advised that that this "single contact factor" cannot be of such significance that it outweighs the contacts in favor of applying South Carolina law, as "the mere fact that a company is headquartered in New Jersey or that unlawful conduct emanated from

---

[5] Although Plaintiff does not argue that factor (e)—the place where a tangible thing which is the subject of the transaction between the parties was situated at the time—supports applying California law, it is unclear from the pleadings where the Alert System, which Plaintiff bought via Amazon, was situated at the time of purchase. However, this factor is only of importance "provided… both parties were aware that the thing was situated in this place at that time, and is of particular importance when the subject of the transaction is land." Restatement (Second) of Conflict of Laws § 148 cmt. i (1971). There is no indication that Plaintiff knew, or even could have known, where the Alert System was when he made the purchase, and, clearly, this is not a land transaction. Thus, even if the product was located in California at the time of purchase, the factor would not heavily weigh in favor of applying California law.

18

New Jersey will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship" under the relevant Restatement. *Id.* at 209. *See also Grandalski*, 767 F.3d at 182 (quoting *Maniscalco,* 709 F.3d at 208–09) (applying *Maniscalco* when only factor (c) weighed in favor of applying the law of state where defendant was headquartered because*,* "[n]othing else about the relationship between the parties, other than the fortuitous location of [the defendant's] headquarters, took place in the state of New Jersey. [Plaintiff's] home state, in which he received and relied on [the defendant's] alleged fraud, has the 'most significant relationship' to his consumer fraud claim."). Thus, as in *Maniscalco* and *Granalski*, Plaintiff's home state, New Jersey, has the most significant relationship with Plaintiff's claims.[6]

Moreover, Plaintiff's reliance on a single case, *In re Mercedes–Benz Tele Aid Contract Litigation,* 257 F.R.D. 46 (D.N.J. 2009), is misplaced. There, the court applied Section 148(2) to consumer fraud claims arising out of a manufacturer's alleged failure to disclose information pertaining to the impending obsolescence of an emergency response system installed in plaintiffs' vehicles. *Id.* at 65. The court noted that all of the actions and misrepresentations were "planned and implemented" in New Jersey, and found that the NJCFA's interest in deterring local corporations—by permitting class actions and treble damages—"would be compromised if the company were subjected to the law of states that do not [have such remedies available] in consumer fraud cases." *Id.* at 68. However, in *Maniscalco*, the Third Circuit rejected the reasoning in *Tele Aid*:

---

[6] Plaintiff also argues that certain of the § 6 Restatement factors weigh in favor of applying California law, but does not focus on those factors identified as applicable by the Third Circuit in *Maniscalco*. In conducting this choice of law analysis, I have taken the applicable factors into consideration and conclude that they do not alter the result that New Jersey law applies.

19

> While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state. New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.

*Maniscalco*, 709 F.3d at 210. Here, too, while California does have an interest in deterring corporate misconduct, it is New Jersey, Plaintiff's home state, that has the most significant contacts.

Therefore, New Jersey, not California, has the most significant relationship to Plaintiff's claims, and accordingly, all nationwide claims under California law are dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to compel arbitration is **DENIED**, but its partial motion to dismiss is **GRANTED**. Thus, all claims, besides those brought by Plaintiff, individually and on behalf of a putative class of New Jersey residents under New Jersey law, are dismissed.


Dated: January 31, 2019 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge